12-081253

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In Re:                                        Case No.  17-60649 MER
                                              Chapter 13

Christie Lee Szabla
asf Pride Martial Arts & Fitness, LLC
and Jason Joseph Szabla,

            Debtors.

_____

## NOTICE OF HEARING AND MOTION
## FOR RELIEF FROM STAY

TO:    The Debtors and other entities specified in Local Rule 9013-3(a).

1.     Federal National Mortgage Association ("Fannie Mae") (hereinafter "Movant"),
by its undersigned attorneys, moves the Court for relief requested below and gives Notice
of Hearing.

2.     The Court will hold a Hearing on this motion at 1:00 P.M., on May 1, 2018, in
Courtroom No. 2, at 204 U.S. Courthouse, 2nd Floor, 118 South Mill Street, Fergus Falls,
MN.

3.     Any response to this Motion must be filed and delivered no later than Thursday
April 26, 2018, which is five (5) days before the time set for the hearing (including
Saturdays, Sundays, and holidays).  UNLESS A RESPONSE OPPOSING THE
MOTION IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT
A HEARING.

4.     This court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and
1334, Federal Rule of Bankruptcy Procedure 5005, and Local Rule 1070-1.  This
proceeding is a core proceeding.

5.     The petition commencing this case was filed on November 2, 2017.

6.     This Motion arises under 11 U.S.C. § 362(d) and Federal Rule of Bankruptcy
Procedure 4001.  This Motion is filed pursuant to Fed. R. Bankr. P. 9014 and Local Rules
4001-1 and 9013-1 through 9019-3.

7.      Movant Requests Relief from the automatic stay with respect to real property subject to a mortgage lien, effective immediately, notwithstanding Fed. R. Bankr. P. 4001(a)(3).

8.      The Debtors executed a promissory note in the original amount of $205,000.00 dated September 5, 2007 (hereinafter the "Note" or "Debt Agreement").

9.      The Note is either made payable to the Movant or has been duly indorsed. Movant has possession of the Note directly or through an agent.

10.     The Note is secured by a valid, perfected mortgage lien (hereinafter the "Mortgage"), encumbering real property located at 24480 17th Avenue, Saint Augusta, MN 56301 and legally described as:

> Lot Two (2), Block Three (3), Blackberry Farms, according to the Plat and Survey thereof on File and of Record in the Office of the County Recorder in and for Stearns County, Minnesota.

11.     Movant is the holder of the Mortgage pursuant to assignment of mortgage and is entitled to enforce the terms thereof.

12.     The Note and Mortgage provide that failure to make the payments due under the Note are a condition of default, the occurrence of which gives Movant the right to proceed with foreclosure of the Mortgage.

13.     Under the terms of the Chapter 13 Plan, the Debtors agreed to make all current monthly payments due on the Mortgage directly to the Movant.

14.     The Debtors have failed to make the promised post-petition payments with respect to the Note and Mortgage and are in default under the terms of the Chapter 13 Plan.

15.     As of March 8, 2018, the total amount of the Mortgage default is $3,495.73, which is detailed on Local Form 4001-1.

16.     As of March 8, 2018, the total balance owed under the Mortgage was $224,075.38.

17.     The current tax assessed value of the property is $198,900.00.  The Debtors estimate the value of the property as $196,100.00.  Based upon available information, the Movant adopts $198,900.00 as the estimated fair market value of the property.

18.     In order to protect its interest in the secured property of the Debtors, the Movant must pursue its remedies to foreclose under Minnesota law.  Movant has and will incur legal fees and costs to protect and enforce its rights in the property.

19.     Cause exists for the Court to vacate the automatic stay imposed by 11 U.S.C. § 362(a), because the Debtors have failed to provide Movant with adequate protection. Further, Movant is entitled to termination of the automatic stay because there is no equity in the property, nor is the property is necessary to an effective reorganization.

20.     **This is an attempt to collect a debt and any information obtained will be used for that purpose.**  This notice is required by the provisions of the Fair Debt Collection Practices Act and does not imply that we are attempting to collect money from anyone who has discharged the debt under the Bankruptcy Laws of the United States.

WHEREFORE, pursuant to 11 U.S.C. § 362(d), Federal National Mortgage Association ("Fannie Mae"), respectfully moves the Court for an Order:

1.     Granting relief from the automatic stay imposed by 11 U.S.C. § 362(a).

2.     Determining that the 14 day stay under Fed. R. Bankr. P. 4001(a)(3) be waived so that this order for relief is effective immediately upon entry.

3.     For such other and further relief as the Court finds equitable and just.

Dated: April 9, 2018

Signed: /s/ Jessica L. Salyers
Lawrence P. Zielke - 152559
Kalli L. Ostlie - 0329678
Jessica L. Salyers - 0398808
Shapiro & Zielke, LLP
Attorneys for Movant
12550 West Frontage Road
Suite 200
Burnsville, MN 55337
(952) 831-4060
jsalyers@logs.com

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO. 17-60649 MER** |
| **Christie Lee Szabla** | § | |
| **asf Pride Martial Arts & Fitness,** | § | **CHAPTER 13** |
| **LLC** | § | |
| **and Jason Joseph Szabla** | § | |
| | § | |
| **DEBTORS** | § | |
| | § | |
| | § | |
| **Federal National Mortgage** | § | |
| **Association ("Fannie Mae")** | § | |
| | § | |
| **MOVANT** | § | |

### AFFIDAVIT IN SUPPORT OF MOTION FOR RELIEF FROM STAY

I, _____Catherine Rogers_____, hereby state the following:

1. I am a duly authorized representative of Seterus, Inc., a Delaware corporation, as

   authorized subservicer for Federal National Mortgage Association ("Fannie Mae")

   and am authorized to sign this affidavit on behalf of Federal National Mortgage

   Association ("Fannie Mae") ("Movant"), and hereby make this Affidavit in such

   capacity. Federal National Mortgage Association ("Fannie Mae") is a corporation

   organized and existing under the laws of the United States of America and is

   authorized to sue on its own behalf.

2. In the course of my employment, I have become familiar with the manner and

   method in which Movant maintains its books and records in its regular course of

   business.  Those books and records are managed by employees and agents whose

duty is to keep the books and records accurately and completely and to record each

event or item at or near the time of the event or item so noted.

3.  I have reviewed the books and records related to the Note secured by Mortgage of

    even date therewith covering real property located at 24480 17th Avenue, Saint

    Augusta, MN 56301, and legally described as:

    > Lot Two (2), Block Three (3), Blackberry Farms, according to the Plat and
    > Survey thereof on File and of Record in the Office of the County Recorder
    > in and for Stearns County, Minnesota. Stearns County, Minnesota.

    A true and correct copy of the Note is attached as Exhibit A.  A true and correct

    copy of the Mortgage and Loan Modification are attached as Exhibit B.

4.  Seterus, Inc. services the loan on the property referenced in this Motion for Relief.

    In the event the automatic stay in this case is modified, this case dismisses, and/or

    the Debtors obtains a discharge and a foreclosure action is commenced on the

    mortgaged property, the foreclosure will be conducted in the name of Federal

    National Mortgage Association ("Fannie Mae"), or its successors or assigns.

    Federal National Mortgage Association ("Fannie Mae"), directly or through an

    agent, has possession of the promissory note.  The promissory note is either made

    payable to Federal National Mortgage Association ("Fannie Mae"), or has been

    duly endorsed.  Federal National Mortgage Association ("Fannie Mae") is the

    original mortgagee, or beneficiary, or the assignee of the security instrument for

    the referenced loan.

5.  The Note, in the original principal amount of $205,000.00, dated September 5,

    2007, was executed by the original mortgagor Jason J. Szabla to General Mortgage

Finance Corp, a Minnesota Corporation.  The Mortgage, in the original principal

amount of $205,000.00, dated September 5, 2007, were executed by the original

mortgagors Jason J. Szabla and Christie Szabla, husband and wife as joint tenants,

to Mortgage Electronic Registration Systems, Inc., as nominee for General

Mortgage Finance Corp, a Minnesota Corporation.

6.  Said Mortgage and Note were subsequently assigned to, transferred to or acquired

by Federal National Mortgage Association.  A copy of the Assignment is attached

as Exhibit C.

7.  Debtors are in default on their obligations to Movant in that Debtors have failed to

make their installment payments when due and owing pursuant to the terms of the

above-described Note and Mortgage.

8.  As of March 8, 2018, the total indebtedness was $224,075.38.  Debtors are due 3

post-petition payments (January 1, 2018 - March 1, 2018 @ $1,200.59), including

attorney fees and costs, less suspense totaling $3,495.73.  The amount of the

current monthly Mortgage installment payment is $1,200.59.

9.  By failing to make the regular monthly installment payments due pursuant to the

Note and Mortgage, Debtors have not provided adequate protection to Movant.

10. Movant has had to retain counsel to represent it before this Court and is incurring

legal expenses and attorneys' fees for which it is entitled to reimbursement under

the terms of the Mortgage.  The standard in the industry is for the attorney to

charge a flat fee to complete a Motion for Relief from beginning to end.  The fee

charged is largely established and controlled by Fannie Mae, Freddie Mac, HUD

or VA guidelines.  The flat fee incurred to file this Motion for Relief was $850.00.

The attorney incurred a cost of $181.00 to file the Motion.  Therefore, Movant is

requesting $1,031.00 in attorneys' fees and costs from the Debtors.

11. Seterus, Inc. is the authorized servicer for Federal National Mortgage Association

("Fannie Mae"), its successors and assigns, and has the authority to act on its

behalf pursuant to the Limited Power of Attorney.  Attached as Exhibit D is said

Limited Power of Attorney.

12. The current tax assessed value of the property is $198,900.00.  Movant adopts the

tax value for purposes of this Motion.  Attached as Exhibit E is a true and correct

copy of the Stearns County tax assessment for the subject property.

13. As of March 8, 2018, the total indebtedness to Movant was $224,075.38.  The fair

market value of the Property as averred by the Debtors is approximately

$196,100.00.  Upon information and belief, the encumbrances on the Property

listed in the Schedules or otherwise known, including but not limited to the

encumbrances granted to Movant, in order of priority are:  (i) Movant

$224,075.38.

14. Attached as Exhibit F is a true and correct copy of the loan history beginning on

the date of the post-petition default through March 8, 2018 applicable to this

Motion provided on Local Form 4001-1.

I declare that the foregoing facts are true and correct to the best of my knowledge and

belief.

FURTHER AFFIANT SAYETH NAUGHT.

Our File No. 12-081253
Court File No. **17-60649 MER**

By: _Catherine Rogers_

Print Name: _Catherine Rogers_

Title: _Document Management Specialist_

of Seterus, Inc., as authorized subservicer for

Federal National Mortgage Association ("Fannie

Mae")

Seterus, Inc., as authorized sub-servicer
for Federal National Mortgage
Association ("Fannie Mae"), a
corporation organized and existing under
the laws of the United States of America

SUBSCRIBED AND SWORN TO before me by _Amy Dian Gauthier_ on this the ___23___

day of _March_ , 20 _18_ , by _Catherine Rogers_ the

_Document Management_

_Specialist_ of Seterus, Inc., a Delaware corporation, as authorized

subservicer of Federal National Mortgage Association ("Fannie Mae"), a corporation organized

and existing under the laws of the United States of America.

Official Stamp
**Amy Dian Gauthier**
Notary Public - Oregon
Commission No. 954703
My Commission Expires September 18, 2020

Notary Public in and for the

State of _OR_

"This is certified to be a true
and exact copy of the original."

TRI COUNTY ABSTRACT & TITLE GUAR., INC.

MIN: [redacted]           **NOTE**

SEPTEMBER 5, 2007                    ST. LOUIS PARK           MINNESOTA
[Date]                                    [City]                  [State]

24480 17TH AVENUE, SAINT AUGUSTA, MINNESOTA 56301
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ 205,000.00          (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is GENERAL MORTGAGE FINANCE CORP, A MINNESOTA CORPORATION                                    .
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of      7.500 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the 1st  day of each month beginning on  OCTOBER 1 2007   . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  SEPTEMBER 1, 2037   , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 5775 WAYZATA BOULEVARD, SUITE 845, ST. LOUIS PARK, MINNESOTA 55416
or at a different place if required by the Note Holder.

**(B) Amount of Monthly Payments**

My monthly payment will be in the amount of U.S. $ 1,433.39          .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit;

Borrower Initials: _____ _____ _____ _____ _____

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                                    Page 1 of 3

DocMagic e??????  800 649-1362
www.docmagic.com

**EXHIBIT**

A

and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.  BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments
If the Note Holder has not received the full amount of any monthly payment by the end of        15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default
If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C)  Notice of Default
If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D)  No Waiver By Note Holder
Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E)  Payment of Note Holder's Costs and Expenses
If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7.  GIVING OF NOTICES
Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE
If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9.  WAIVERS
I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10.  UNIFORM SECURED NOTE
This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep

Borrower Initials: _____   _____   _____   _____   _____   _____

MULTISTATE FIXED RATE NOTE–Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                                   Page 2 of 3                    DocMagic ☎ 800-649-1362
                                                                                 www.docmagic.com

the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)        _____ (Seal)
JASON J SZABLA                 -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family
Fannie Mae/Freddie Mac UNIFORM INSTRUMENT
Form 3200  1/01                              Page 3 of 3

DocMagic *eForms* 800-649-1362
www.docmagic.com

# ALLONGE TO NOTE

LOAN #: █████████

PROPERTY ADDRESS: 24480 17TH AVENUE, SAINT AUGUSTA, MINNESOTA 56301

PRINCIPAL BALANCE: $205,000.00

ALLONGE TO NOTE DATED: SEPTEMBER 5, 2007

IN FAVOR OF   GENERAL MORTGAGE FINANCE CORP, A MINNESOTA
CORPORATION

PAY TO THE ORDER OF

AND EXECUTED BY
JASON J SZABLA

WITHOUT RECOURSE
COUNTRYWIDE HOME LOANS, INC

*Michele Sjolander*

BY: _____

PAY TO THE ORDER OF COUNTRYWIDE BANK, FSB.

MICHELE SJOLANDER
EXECUTIVE VICE PRESIDENT

WITHOUT RECOURSE
GENERAL MORTGAGE FINANCE CORP, A MINNESOTA CORPORATION

BY: _____

TITLE: DANIEL LINDGREN/PRESIDENT

PAY TO THE ORDER OF
Countrywide Home Loans, Inc
WITHOUT RECOURSE
COUNTRYWIDE BANK, FSB

BY _____
LAURIE MEDER
SENIOR VICE PRESIDENT

ALLONGE TO NOTE
10/14/05

DocMagic *eRuntime* 800-649-1362
www.docmagic.com

Am.lsr-e

OFFICE OF COUNTY RECORDER
STEARNS COUNTY, MINNESOTA

Document # **1237941**

Certified, Filed, and/or Recorded on

**09-10-2007** at **02:56 PM**

DIANE GRUNDHOEFER
STEARNS COUNTY RECORDER

MORTGAGE REGISTRATION TAX $ 471.50

STEARNS COUNTY AUDITOR

DEPUTY AUDITOR

——————————— [Space Above This Line For Recording Data] ———————————

# MORTGAGE

Drafted By&

After Recording Return To:
GENERAL MORTGAGE FINANCE CORP
5775 WAYZATA BOULEVARD, SUITE 845
ST. LOUIS PARK, MINNESOTA 55416
Loan Number: █████████

MI███████████████████

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)** "**Security Instrument**" means this document, which is dated SEPTEMBER 5, 2007 , together with all Riders to this document.
**(B)** "**Borrower**" is JASON J SZABLA AND CHRISTIE SZABLA, HUSBAND AND WIFE AS JOINT TENANTS

Borrower is the mortgagor under this Security Instrument.
**(C)** "**MERS**" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. **MERS is the mortgagee under this Security Instrument.** MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. ██████████.
**(D)** "**Lender**" is GENERAL MORTGAGE FINANCE CORP

Lender is a MINNESOTA CORPORATION                                          organized
and existing under the laws of MINNESOTA
Lender's address is 5775 WAYZATA BOULEVARD, SUITE 845, ST. LOUIS PARK,
MINNESOTA 55416

Borrower Initials:

DocMagic *eForms* 800-649-1362
www.docmagic.com

SCR 1 of 14

TCA████████Return To: Tri-County Abst.

Mn3024.mzm.1.tem

**EXHIBIT**

B

tabbies

**(E)** **"Note"** means the promissory note signed by Borrower and dated   SEPTEMBER 5, 2007
The Note states that Borrower owes Lender   TWO HUNDRED FIVE THOUSAND AND 00/100
Dollars (U.S. $ 205,000.00 ) plus interest. ✓
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
SEPTEMBER 1, 2037 .
**(F)** **"Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** **"Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
**(H)** **"Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider      ☐ Planned Unit Development Rider
☐ Balloon Rider              ☐ Biweekly Payment Rider
☐ 1-4 Family Rider           ☐ Second Home Rider
☐ Condominium Rider          ☐ Other(s) [specify]

**(I)** **"Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J)** **"Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
**(K)** **"Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
**(L)** **"Escrow Items"** means those items that are described in Section 3.
**(M)** **"Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** **"Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** **"Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
**(P)** **"RESPA"** means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** **"Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

Borrower Initials: _____  _____  _____  _____  _____

MINNESOTA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS    DocMagic *EForms* 800-649-1362
Form 3024 01/01                                Page 2 of 14                        www.docmagic.com

SCR 2 of 14

Mn3024.mzm.2.tem

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS, with power of sale, the following described property located in the

|               COUNTY               | of |               STEARNS                | : |
|------------------------------------|----|--------------------------------------|---|
| [Type of Recording Jurisdiction]   |    | [Name of Recording Jurisdiction]     |   |

LOT TWO (2), BLOCK THREE (3), BLACKBERRY FARMS, ACCORDING TO THE PLAT AND SURVEY THEREOF ON FILE AND OF RECORD IN THE OFFICE OF THE COUNTY RECORDER IN AND FOR STEARNS COUNTY, MINNESOTA
A.P.N.: 81-43168-542

which currently has the address of    24480 17TH AVENUE
[Street]

SAINT AUGUSTA              , Minnesota      56301      ("Property Address"):
[City]                                     [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:

1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in

Borrower Initials:

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic *eForms* 800-649-1362
Form 3024 01/01                                   Page 3 of 14                                  www.docmagic.com

SCR 3 of 14

Mn3024.mzm.3.tem

one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.  Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.  Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section

Borrower Initials: _____   _____   _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01                                      Page 4 of 14                         DocMagic *eForms* 800-649-1362
                                                                                         www.docmagic.com

SCR 4 of 14

Mn3024.mzm.4.tem

15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

Borrower Initials:

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01

Page 5 of 14

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

SCR 5 of 14

Mn3024.mzm.5.tem

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

   **6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

   **7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released

Borrower Initials: _____ _____ _____ _____ _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01          Page 6 of 14

*DocMagic eForms* 800-649-1362
*www.docmagic.com*

SCR _6_ of _14_

Mn3024.mzm.6.rem

proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8.   Borrower's Loan Application.**  Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9.   Protection of Lender's Interest in the Property and Rights Under this Security Instrument.**  If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay

Borrower Initials: _____   _____   _____   _____   _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01                                     Page 7 of 14

DocMagic *ⓔFⓡ*ⓜⓢ 800-649-1362
www.docmagic.com

SCR _7_ of _14_

Mn3024.mzm.7.tem

the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law.  Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed.  Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses.  These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements.  These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses.  If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance."  Further:

**(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan.  Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

**(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law.  These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11.  Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened.  During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly.  Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed.  Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds.  If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.  Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value.  Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise

Borrower Initials: _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01                                    Page 8 of 14

DocMagic *Payment* 800-649-1362
www.docmagic.com

SCR 8 of 14

Mn3024.mzm.8.tem

agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of

Borrower Initials: _____  _____  _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01                                   Page 9 of 14

DocMagic *EForms* 800-649-1362
www.docmagic.com

SCR 9 of 14

Mn3024.mzm.9.tem

any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument at the time such documents are executed or within a reasonable time thereafter.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged.

Borrower Initials: _____ _____ _____ _____ _____ _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      *DocMagic eForms* 800-649-1362
Form 3024 01/01                                    Page 10 of 14                                    *www.docmagic.com*

Mn3024.mzm.10.tem

SCR *10* of *14*

Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer.  Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred.  However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower.  A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law.  There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note.  If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing.  If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action.  If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph.  The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property.  Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property.  The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property.  If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall

Borrower Initials:

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01                                        Page 11 of 14

*DocMagic* 800-649-1362
www.docmagic.com

Mn3024.mzm.11.tem

SCR 11 of 14

promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** **Lender shall give notice to Borrower by certified mail to the address of the Property or another address designated by Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees.**

**If Lender invokes the power of sale, Lender shall cause a copy of a notice of sale to be served upon any person in possession of the Property. Lender shall publish a notice of sale, and the Property shall be sold at public auction in the manner prescribed by Applicable Law. Lender or its designee may purchase the Property at any sale. The proceeds of the sale shall be applied in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** Borrower waives all right of homestead exemption in the Property.

**25. Interest on Advances.** The interest rate on advances made by Lender under this Security Instrument shall not exceed the maximum rate allowed by Applicable Law.

Borrower  Initials: _____ _____ _____ _____

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3024 01/01
Page 12 of 14

DocMagic *eForms* 800-649-1362
www.docmagic.com

SCR 12 of 14

Mn3024.mzm.12.tem

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)                    _____ (Seal)
JASON J SZABLA                         -Borrower            CHRISTIE SZABLA                         -Borrower


_____ (Seal)                    _____ (Seal)
                                       -Borrower                                                   -Borrower


_____ (Seal)                    _____ (Seal)
                                       -Borrower                                                   -Borrower


Witness:                                                    Witness:


_____                            _____


MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          *DocMagic* *eForms* 800-649-1362
Form 3024 01/01                                Page 13 of 14                                   www.docmagic.com

SCR 13 of 14

Mn3024.mzm.13.tem

——————————— [Space Below This Line For Acknowledgment] ———————————

State of Minnesota,

County of _Stearns_____

The instrument was acknowledged before me on _Sept 5, 2007_____

by _JASON J SZABLA AND CHRISTIE SZABLA, HUSBAND AND WIFE AS JOINT_

TENANTS_____

LORI STEINHOFER
NOTARY PUBLIC - MINNESOTA
My Commission Expires Jan. 31, 2010

_Lori Steinhofer_
Notary Public

(Seal)                          My commission expires: _1-31-10_____

This instrument was drafted by:

Tax statements for the real property described in this instrument should be sent to:
GENERAL MORTGAGE FINANCE CORP
5775 WAYZATA BOULEVARD, SUITE 845
ST. LOUIS PARK, MINNESOTA 55416

MINNESOTA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS        DocMagic *eForms* 800-649-1362
Form 3024 01/01                          Page 14 of 14                            www.docmagic.com

SCR 14 of 14

Mn3024.mzm.14.tem

Loan number ███████
Investor loan number ███████

# LOAN MODIFICATION AGREEMENT
### (Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 14th day of September, 2016, between SZABLA, JASON J ("Borrower") and Seterus, Inc. ("Servicer") Loan Servicer for Federal National Mortgage Association ("Lender"), amends and supplements (1) the Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), and Timely Payment Rewards Rider, if any, dated September 05, 2007 and (2) the Note, bearing the same date as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

24480 17TH AVE, SAINT AUGUSTA MN 56301-1721

In consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (notwithstanding anything to the contrary contained in the Note or Security Instrument):

1.  As of October 01, 2016, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is U.S. $217,408.84, consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized.

2.  Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 3.625%, from September 01, 2016. Borrower promises to make monthly payments of principal and interest of U.S. $858.60, beginning on the 1st day of October, 2016, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. The yearly rate of 3.625% will remain in effect until principal and interest are paid in full. If on September 01, 2056 (the "Maturity Date"), Borrower still owes amounts under the Note and the Security Instrument, as amended by this Agreement, Borrower will pay these amounts in full on the Maturity Date.

3.  In addition to the regularly scheduled payments that Borrower is required to pay under the Modification Agreement, Borrower agrees to pay Servicer an escrow payment in the amount of $387.25 for deposit into an escrow account for necessary payments to be made by Servicer, including but not limited to, payments for property taxes and insurance. As permitted by the Real Estate Settlement Procedures Act and other applicable law, Servicer may adjust the amount of the Escrow Payment. After notice of such adjustment, Borrower shall pay the adjusted Escrow Payment.
    (a) Each Escrow Payment shall be due on the same day(s) of the month as the regularly scheduled payments due under the Modification, commencing October 01, 2016.
    (b) In the event Escrow Payments are not made and Servicer advances its own funds to make payments that should have been paid from Borrower's escrow account, such amounts will be added to Borrower's loan obligation under the Note.
    (c) Any failure to make an Escrow Payment when due shall be deemed to be a default under the Note and Modification Agreement and upon Borrower's failure to pay the Escrow Payment, Servicer may exercise its rights under the Note and Modification Agreement.

(d) Unless an agreement is made in writing or applicable law requires interest to be paid on the escrow account payments held by Servicer, Servicer shall not be required to pay any interest or earnings on the payments held.

4. If all or any part of the Property or any interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by the Security Instrument.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

5. Borrower also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that Borrower is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

   (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note, including, where applicable, the Timely Payment Rewards rate reduction, as described in paragraph 1 of the Timely Payment Rewards Addendum to Note and paragraph A.1. of the Timely Payment Rewards Rider. By executing this Agreement, Borrower waives any Timely Payment Rewards rate reduction to which Borrower may have otherwise been entitled; and

   (b) all terms and provisions of any adjustable rate rider, or Timely Payment Rewards Rider, where applicable, or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

6. Borrower understands and agrees that:

   (a) If Borrower has failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will be null and void.

   (b) All the rights and remedies, stipulations, and conditions contained in the Security Instrument relating to default in the making of payments under the Security Instrument shall also apply to default in the making of the modified payments hereunder.

   (c) All covenants, agreements, stipulations, and conditions in the Note and Security Instrument shall be and remain in full force and effect, except as herein modified, and none of the Borrower's obligations or liabilities under the Note and Security Instrument shall be diminished or released by any provisions hereof, nor shall this Agreement in any way impair, diminish, or affect any of Lender's rights under or remedies on the Note and Security Instrument, whether such rights or remedies arise thereunder or by operation of law. Also, all rights of recourse to which Lender is presently entitled against any property or any other

persons in any way obligated for, or liable on, the Note and Security Instrument are expressly reserved by Lender.

(d) Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument.

(e) All administration and processing costs incurred by Servicer in connection with this Agreement, such as required notary fees, recordation fees, title costs and property valuation fees, shall be paid by the Servicer, unless otherwise stipulated.

(f) Borrower agrees to make and execute such other documents or papers as may be necessary or required to effectuate the terms and conditions of this Agreement which, if approved and accepted by Lender, shall bind and inure to the heirs, executors, administrators, and assigns of the Borrower.

(g) To execute other documents as may be reasonably necessary to correct an error (including but not limited to any inaccuracy, mistake or omission) if an error is detected after execution of this Agreement. In the event an error is detected, a corrected Agreement will be provided to Borrower, and this Agreement will be void and of no legal effect upon notice of such error. If Borrower elects not to sign any such corrected Agreement, the terms of the original Note and Security Instrument shall continue in full force and effect and such terms will not be modified by this Agreement.

7. Notwithstanding anything to the contrary contained in this Agreement, Borrower and Lender acknowledge the effect of a discharge in bankruptcy that has been granted to Borrower prior to the execution of this Agreement and that Lender may not pursue Borrower for personal liability. However, Borrower acknowledges that Lender retains certain rights, including but not limited to the right to foreclose its lien evidenced by the Security Instrument under appropriate circumstances and as allowed by applicable law. The parties agree that the consideration for this Agreement is Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of Borrower's default thereunder. Nothing in this Agreement shall be construed to be an attempt to collect against Borrower personally or an attempt to revive personal liability.

8. Borrower will pay to Lender on the day payments are due under the Loan Documents as amended by this Agreement, until the Loan is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under the Loan Documents; (d) mortgage insurance premiums, if any, or any sums payable to Lender in lieu of the payment of mortgage insurance premiums in accordance with the Loan Documents; and (e) any community association dues, fees, and assessments that Lender requires to be escrowed. These items are called "Escrow Items." Borrower shall promptly furnish to Lender all notices of amounts to be paid under this paragraph. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be

a covenant and agreement contained in the Loan Documents, as the phrase "covenant and agreement" is used in the Loan Documents. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under the Loan Documents and this Agreement and pay such amount and Borrower shall then be obligated to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with the Loan Documents, and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this paragraph.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under the Real Estate Settlement Procedures Act ("RESPA"), and (b) not to exceed the maximum amount a Lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and applicable law permits Lender to make such a charge. Unless an agreement is made in writing or applicable law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Lender and Borrower can agree in writing, however, that interest shall be paid on the Funds. Lender shall provide Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by the Loan Documents, Lender shall promptly refund to Borrower any Funds held by Lender.

9.  Any and all attorneys fees and legal costs incurred by Borrower or its representatives, with respect to this loan, will be the sole responsibility of the Borrower.

10. In the event of future default, Borrower authorizes Lender and Lender's successors and assigns, to share certain Borrower public and non-public personal information including, but not limited to (i) name, address, telephone number, (ii) Social Security Number, (iii) credit score, (iv) income, and (v) payment history and information about Borrower's account balances and activity, with an authorized third party, which may include, but is not limited to, a counseling agency, state or

local Housing Finance Agency, or similar entity that is assisting Borrower in connection with obtaining a foreclosure prevention alternative, including the Trial Period Plan to modify Borrower's loan ("Authorized Third Party").

Borrower understands and consents to Lender or Authorized Third Party, as well as Fannie Mae (the owner of Borrower's loan), disclosing such personal information and the terms of any relief or foreclosure prevention alternative, including the terms of the Trial Period Plan to modify Borrower's loan, to any insurer, guarantor, or servicer that insures, guarantees, or services Borrower's loan or any other mortgage loan secured by the Property on which Borrower is obligated, or to any companies that perform support services to them in connection with the loan or any other mortgage loan secured by the Property on which Borrower is obligated.

Borrower consents to being contacted by Fannie Mae, Lender, or Authorized Third Party concerning mortgage assistance relating to Borrower's loan including the Trial Period Plan to modify Borrower's loan, at any telephone number, including mobile telephone number, or email address Borrower has provided to Lender or Authorized Third Party.

By checking this box, Borrower also consents to being contacted by text messaging. ☐

In Witness Whereof, the Servicer and I have executed this Agreement.

| | |
|---|---|
| Seterus, Inc.  Authorized Signer | Date |
| SZABLA, JASON J | 9-29-16 |
| | Date |





**OFFICE OF COUNTY RECORDER**
**STEARNS COUNTY, MINNESOTA**

**Document: A1366423**

Certified, Filed, and/or Recorded on

**April 10, 2012 12:49 PM**

**DIANE GRUNDHOEFER**
**STEARNS COUNTY RECORDER**

# MINNESOTA

LOAN NO. ███████████

POOL NO.
COUNTY OF *STEARNS (A)*

*Assignment-Interv.-Recorded*

PREPARED BY AND
WHEN RECORDED MAIL TO:
SETERUS, INC.
14523 SW MILLIKAN WAY, #200
BEAVERTON, OR 97005
ATTN

# ASSIGNMENT OF REAL ESTATE

KNOW ALL MEN BY THESE PRESENTS THAT *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. SOLELY AS NOMINEE FOR GENERAL MORTGAGE FINANCE CORP. ITS SUCCESSORS AND ASSIGNS,*

located at *1901 E VOORHEES ST. SUITE C, , DANVILLE, IL 61834*
_____ party of the first part, has granted, bargained, assigned,
transferred and set over unto *FEDERAL NATIONAL MORTGAGE ASSOCIATION*

located at *14221 DALLAS PARKWAY, SUITE 1000   DALLAS, TX 75254*

party of the second part, its successors and assigns, a certain indenture
of mortgage dated *5th*       day of *SEPTEMBER*       A.D. *2007*     ,
made by *JASON J SZABLA AND CHRISTIE SZABLA, HUSBAND AND WIFE AS JOINT TENANTS*

securing the payment of one promissory note therein described for
the sum of *TWO HUNDRED FIVE THOUSAND and NO/100-----*          dollars
($*205,000.00*_____) and all its right, title and interest in
and to the premises situated in County of *STEARNS*          State of
Minnesota.
   Which said mortgage is recorded in the office of the recorder of
*STEARNS*_____ County, in the State of Minnesota on
*SEPTEMBER 10, 2007*     , in Book No. _____ at Page _____
as Microfilm No._____, Document No.*1237941*_____, TCT No.

███████████

Loan No.

████████          ████████████████████

Page 1 of 2

✓ *Shapiro & Zielke*

SCR __/__ of __2__

**EXHIBIT**

*tabbies* ___C___

Loan No. ▮▮▮▮▮▮▮▮▮▮▮

TO HAVE AND TO HOLD the same unto the said party of the  second part, its
successors and  assigns, forever, subject  only to the  provisions in the
said indenture of mortgage contained.

IN WITNESS WHEREOF, the party of the first part has caused this instrument
to be executed in its name by *TIFFANY BITSOI*                   , *ASSISTANT*
*SECRETARY*                       and attested by *REBECCA HIGLEY*              ,
*ASSISTANT SECRETARY*                         this  *6th*   day of *MARCH 2012*  .

ATTEST:
                          *MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.*


                              BY _____
                                 *TIFFANY BITSOI*
                                 *ASSISTANT SECRETARY*

                              BY _____
                                 *REBECCA HIGLEY*
                                 *ASSISTANT SECRETARY*

STATE OF *IDAHO*_____)
                               )
COUNTY OF *BONNEVILLE*_____)

On *MARCH 6, 2012*_____, before me, *VICKIE SORG*_____
personally appeared *TIFFANY BITSOI*_____ and
*REBECCA HIGLEY*_____ personally known to me (or proved to me
on the basis  of satisfactory evidence)  to be the person(s) who executed
the within instrument as *ASSISTANT SECRETARY*_____
and *ASSISTANT SECRETARY*_____ on behalf of the corporation
therein named and acknowledged to me that the corporation executed it.


_____
*VICKIE SORG*  *(COMMISSION EXP. 08-18-17)*
Notary Public

```
┌─────────────────────────┐
│     VICKIE SORG         │
│   NOTARY PUBLIC         │
│   STATE OF IDAHO        │
└─────────────────────────┘
```

Page 2 of 2

SCR  2  of  2

## LIMITED POWER OF ATTORNEY

Federal National Mortgage Association, a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints Seterus Inc, 8501 IBM Drive, Building 201 #2DD188, Charlotte, North Carolina 28262 (headquarters), a Corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-In-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1. the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2. the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3. the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4. the modification or extension of a mortgage or deed of trust;

5. the subordination of the lien of a mortgage or deed of trust;

6. the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions;

   a. the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
   b. the issuance of a statement of breach or nonperformance;
   c. the issuance or cancellation or rescission of notices of default;
   d. the cancellation or rescission of notices of sale; and
   e. the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Federal National Mortgage Association to the Attorney-In-Fact under this Limited Power of Attorney;

7. the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8. the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage insurer; or Mortgage Electronic Registration System (MERS™).

The undersigned gives to said Attorney-In-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-In-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted within this Limited Power of Attorney upon the exercise of such power of the Attorney-In-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this 12th day of October, 2011.

Federal National Mortgage Association

By: _____
    Barbara Cushman
    Asst. Vice President

By _____
   Francisco Nicco-Annan
   Assistant Secretary

STATE OF VIRGINIA        }
COUNTY OF FAIRFAX        }

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this 12th day of October, 2011 by Barbara Cushman, Assistant Vice President, and Francisco Nicco-Annan, Assistant Secretary of Federal National Mortgage Association, a United States Corporation, on behalf of the corporation.

_____
Notary Public: Shanicka Singleton
My Commission Expires: 10/31/2015



SHANICKA SINGLETON
Notary Public - Reg. # 7033944
Commonwealth of Virginia
My Commission Expires Oct. 31, 2015





EXHIBIT

D

**RANDY R. SCHREIFELS**
Stearns County Auditor-Treasurer
Administration Center Rm. 136  PO Box 728
St. Cloud, MN  56302-0728
Phone #:  320-656-3870
Website:  www.co.stearns.mn.us

Owner: SZABLA JASON J & CHRISTIE

JASON J & CHRISTIE SZABLA
24480 17TH AVE
ST AUGUSTA MN 56301

Parcel ID: 81.43168.0542   **Property Address:**
24480 17TH AVE
ST CLOUD MN 56301

**Legal Description:**  SubdivisionName BLACKBERRY FARMS Lot 002 Block 003 SubdivisionCd 81080  Section 12 Township 123 Range 028

# PROPOSED TAXES 2018
## THIS IS NOT A BILL. DO NOT PAY.

### Step 1 — VALUES AND CLASSIFICATION

| Taxes Payable Year | 2017 | 2018 |
|---|---|---|
| Estimated market value: | $196,100 | $198,900 |
| Homestead exclusion: | $19,600 | $19,300 |
| Other exclusion: | $0 | $0 |
| Taxable market value: | $176,500 | $179,600 |
| Class: | Res Hstd | Res Hstd |

### Step 2 — PROPOSED TAX

| | |
|---|---|
| Tax before credits | $2,198.00 |
| School building bond credit | $0.00 |
| Ag Market value credit | $0.00 |
| Other credits | $0.00 |
| Property Taxes after credits | $2,198.00 |

### Step 3 — PROPERTY TAX STATEMENT
Coming in 2018

**The time to provide feedback on PROPOSED LEVIES is NOW**
It is too late to appeal your value without going to Tax Court.

## Proposed Property Taxes and Meetings by Jurisdiction for Your Property

| Contact Information | Meeting Information | Actual 2017 | Proposed 2018 |
|---|---|---|---|
| **State General Tax** | NO MEETING REQUIRED | $0.00 | $0.00 |
| **County - STEARNS COUNTY** | | $923.75 | $938.39 |
| COUNTY OF STEARNS 705 COURTHOUSE SQUARE ROOM 148 SAINT CLOUD MN 56303 320-656-3870 | ADMINISTRATION CENTER 705 COURTHOUSE SQUARE ST CLOUD, MN 56303 320-656-3870 6:00 PM NOV 28, 2017 | | |
| **City or Township - ST AUGUSTA CITY** | | $529.41 | $519.98 |
| ST AUGUSTA CITY 1914 250TH ST SAINT CLOUD MN 56301 3206540387 | ST AUGUSTA CITY HALL 1914 250TH STREET ST CLOUD, MN 56301 320-654-0387 7:00 PM DEC 5, 2017 | | |
| **School District - ISD 0742 ST CLOUD** | | | |
| **Voter Approved Levies** | | $213.26 | $204.66 |
| **Other Local Levies** | | $552.83 | $526.45 |
| ISD #742 ST CLOUD 1000 44TH AVE N SUITE 100 SAINT CLOUD MN 56303 320-253-9333 | ST CLOUD CITY HALL 400 2ND STREET S ST CLOUD, MN 56301 320-253-9333 7:00 PM DEC 21, 2017 | | |
| **Special Taxing Districts** | | $8.75 | $8.52 |
| **Tax Increment Tax** | | $0.00 | $0.00 |

**EXHIBIT** E

**TOTAL excluding special assessments**   $2,228.00

Local Form 4001-1
Loan History

Begin loan history from the date of the first default related to the current default amount that is claimed in the motion.

| Date | Amount Rec'd From Debtor(s) | Monthly Amount Due Principal/Interest | Monthly Amount Due Escrow | Amount Due Late Fees | Amount Due Other Charge* | Description of Other Charge |
|---|---|---|---|---|---|---|
| | | | | **CHARGES** | | |
| 1/1/2018 | | $858.60 | $341.99 | | | |
| 2/1/2018 | | $858.60 | $341.99 | | | |
| 3/1/2018 | | $858.60 | $341.99 | | | |
| | | | | | | |
| | $1,137.04 | | | | | Suspense Balance |
| | | | | | $1,031.00 | Unpaid Bankruptcy MFR Attorney Fees & Costs |
| Total | $1,137.04 | $2,575.80 | $1,025.97 | $0.00 | $1,031.00 | |
| | (a) | (b) | (c) | (d) | (e) | |

*Any "Other Charge" must be described, itemized by amount and allowed under note and/or mortgage (e.g., inspection fee, appraisal fee, insurance, taxes, etc.).

**Note: Columns (b) + (c) + (d) + (e) - (a) must equal the current default amount that is claimed in the motion.**

| | |
|---|---|
| Attorneys fees and filing fee for the motion, if allowed under note and/or mortgage and sought by Movant to resolve motion | $1,031.00 |
| Current Default Amount Claimed in the Motion | $3,495.73 |
| Escrow Advance (amounts held for payment of taxes, insurance, etc.) | |
| Suspense Account Balance (amount of unapplied payments) | -$1,137.04 |



tabbies®

EXHIBIT

F

## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

_____

In Re:                                      Case No. 17-60649 MER
                                            Chapter 13

**Christie Lee Szabla**
**asf Pride Martial Arts & Fitness, LLC**
**and Jason Joseph Szabla,**

        Debtors.

_____

### MEMORANDUM OF LAW

Federal National Mortgage Association ("Fannie Mae") ("Movant"), submits this

memorandum of law in support of its Motion for Relief from the stay in the above-

entitled matter.

### <u>FACTS</u>

On September 5, 2007, the Debtor Jason J. Szabla made, executed, and delivered a

Promissory Note to General Mortgage Finance Corp, a Minnesota Corporation for

$205,000.00 ("Note").  [Affidavit in Support of Motion for Relief from Stay at ¶ 5].  The

Debtors, executed, and delivered a Mortgage granted to Mortgage Electronic Registration

Systems, Inc., as nominee for General Mortgage Finance Corp, a Minnesota Corporation

dated September 5, 2007, and recorded September 10, 2007, in Stearns County as

Document Number 1237941.  [Affidavit in Support of Motion for Relief from Stay at ¶

5].  The Mortgage has been assigned to Movant via assignment of mortgage recorded

April 10, 2012 as Document Number A1366423.  [Affidavit in Support of Motion for

Relief from Stay at ¶ 6].  The mortgage encumbers real property at 24480 17th Avenue,

Saint Augusta, MN 56301. [Affidavit in Support of Motion for Relief from Stay at ¶ 3].

The terms of the Note and Mortgage were amended by the Loan Modification Agreement

dated September 14, 2016. [Affidavit in Support of Motion for Relief from Stay; Ex. B].

The Debtors filed a petition under Chapter 13 of Title 11 of the U.S. Code, listing

real property subject to a security interest held by the Movant in Schedule D.  Pursuant to

the Debtors' Chapter 13 plan, the Debtors agreed to make all post-petition payments due

on the Mortgage directly to the Movant.  The Debtors in this case have failed to make the

post-petition payments required by the Note and Mortgage, as evidenced by Local Form

4001-1. [Affidavit in Support of Motion for Relief from Stay; Ex. F].

## **<u>ARGUMENT</u>**

## I.    **THE MOVANT HAS STANDING TO BRING THIS MOTION FOR RELIEF FROM THE STAY TO FORECLOSE THE MORTGAGE**

A "party in interest" has standing to make a motion for relief from the stay, after

notice and hearing.   11 U.S.C. § 362 (d).  The holder of a note and mortgage, or its

authorized agent, has standing to bring a stay relief motion.  *See, e.g., In re Jacobson,*

402 B.R. 359, 366 (Bankr. W.D. Wash. Mar. 6, 2009) (as modified Mar. 10, 2009).  In

the District of Minnesota, Local Bankruptcy Rule 4001-1 specifies the evidence that the

movant must provide to the court in order to prove standing for a motion for relief from

stay, including a copy of the note, copy of the mortgage recorded in the land records, any

assignments if the movant is not the original mortgagee, and any other evidence that the

movant has authority to make the motion.  Loc. R. Bankr. P. 4001-1(b)(1); LRBP

90132(a); LRBP 9013-2(d).

Exhibits A though C submitted in support of this motion show the chain of title that gives Movant standing to seek relief from the automatic stay.  The Note is made payable to the Movant or has been duly indorsed. Movant has possession of the Note directly or through an agent. The Mortgage was recorded in the county in which the property is located, and the Movant is the original mortgagee, the beneficiary, or the assignee of the Mortgage. Furthermore, the Movant has submitted a copy of a limited power of attorney which establishes the authority for Seterus, Inc. to act on behalf of the Movant in this action and provide verification of the facts related to the motion. [[Affidavit in Support of Motion for Relief from Stay at ¶ 11; Ex. D].  ].  The Movant has provided sufficient evidence to show that it is a party entitled to enforce the terms of the Note and Mortgage, and likewise, that Movant has standing to bring this Motion for Relief.

## II.    MOVANT IS ENTITLED TO RELIEF FROM THE AUTOMATIC STAY "FOR CAUSE" UNDER 11 U.S.C. § 362(d)(1)

Section 362(d) of the Bankruptcy Code governs relief from the automatic stay.  11 U.S.C. § 362(d).  Under Section 362(d)(1), relief from the automatic stay shall be granted upon request of a party in interest "for cause, including the lack of adequate protection of an interest in property of such party." 11 U.S.C. § 362(d)(1).  Cause has been defined to mean "any reason whereby a creditor is receiving less than his bargain from a debtor and is without a remedy because of the bankruptcy proceeding." *In re Martens*, 331 B.R. 395, 398 (8th Cir. B.A.P. 2005) (internal citation omitted).  A secured creditor's interest is not adequately protected where its collateral is depreciating in value. *See United Sav.*

*Ass'n of Texas v. Timbers of Inwood Forest Assoc. Ltd.*, 484 U.S. 365, 370 (1988). Other

grounds for granting relief from the stay to the creditor "for cause" include that the debtor

is not insuring the property or the debtor is failing to pay ongoing utilities, real estate

taxes, or homeowners' association dues which lead to liens that affect the creditor's

position. *See, e.g., In re Biltwood Properties LLC*, 473 B.R. 70 (Bankr. M.D. Pa. 2012)

(although Chapter 11 debtor was making regular mortgage payments, the creditor was not

adequately protected and was thus entitled to stay relief where the debtor had failed to

pay real estate taxes resulting in a superior tax lien); *In re Harwood Hideout, Inc.*, 2005

WL 894828 (Bankr. D. N.D. 2005) (mortgagee was entitled to relief from the stay unless

debtor provided proof of insurance and cured any existing tax deficiencies). The burden

of proof is on the debtor to demonstrate lack of cause by showing that adequate

protection has been provided to the creditor. 11 U.S.C. § 362(g)(2). In a Chapter 13

bankruptcy, the purpose of the Plan is to provide adequate protection to the creditor. A

Debtor's failure to make plan payments and comply with the terms of a Plan is grounds

for a bankruptcy court to grant relief from the automatic stay "for cause." *Reinbold v.*

*Dewey County Bank*, 942 F.2d 1304, 1306-07 (8th Cir. 1991).

Here, the Debtors have not maintained current post-petition payments with respect

to the Note and Mortgage while this case is pending. [Exhibit F, Local Form 4001-1].

The Debtors are therefore in default under the terms of the confirmed Plan. Such

circumstances constitute cause within the meaning of Section 362(d)(1), justifying relief

from the stay.

### III. MOVANT IS ENTITLED TO RELIEF FROM THE STAY UNDER 11 U.S.C. § 362(d)(2) BECAUSE THERE IS NO EQUITY IN THE PROPERTY

Section 362(d)(2) of the Bankruptcy Code provides a separate and independent basis for relief from the automatic stay. Stay relief shall be granted where (A) the debtor does not have any equity in such property; and (B) the property is not necessary to an effective reorganization. 11 U.S.C. § 362(d)(2). A creditor is entitled to relief from the automatic stay if the debtor is not making mortgage payments, and if there is insufficient equity in the property to adequately protect the creditor. *In re Martens*, 331 B.R. at 398. The test for equity under § 362(d)(2) compares all encumbrances against the property to the property's current value, whether or not all lienholders have requested relief from the stay. *In re Bowman,* 253 B.R. 233, 238 (B.A.P. 8th Cir. 2000). Where there exists no equity in the property, it is incumbent upon a debtor to make a showing that the property is necessary to an effective reorganization in order to defend against the motion. *In re Embassy Enterprises of St. Cloud,* 125 B.R. 552, 554 (Bankr. D. Minn. 1991). As evidenced by the verified facts submitted along with this motion, the Debtors have failed to make the payments required by the Note and the Mortgage. [Affidavit in Support of Motion for Relief from Stay]. Presently, the outstanding liens and encumbrances against the property exceed the current market value for the property. As a result, there is insufficient equity in the property to adequately protect the Movant.

## **CONCLUSION**

The facts set forth above establish adequate cause to support a lift of the automatic stay,

and that the 14 day stay pursuant to Bankruptcy Rule 4001(a)(3) be waived. Therefore,

the Movant is entitled to an Order for relief from the stay to foreclose its Mortgage on the

property and protect its security interest under state law.


Respectfully submitted,


Dated: April 9, 2018                    Signed: /s/ Jessica L. Salyers
                                        Lawrence P. Zielke - 152559
                                        Kalli L. Ostlie - 0329678
                                        Jessica L. Salyers - 0398808
                                        Shapiro & Zielke, LLP
                                        Attorneys for Movant
                                        12550 West Frontage Road
                                        Suite 200
                                        Burnsville, MN 55337
                                        (952) 831-4060
                                        jsalyers@logs.com

17-60649 MER

<u>CERTIFICATE OF SERVICE</u>

**STATE OF MINNESOTA**    )
                             ) SS

**COUNTY OF DAKOTA**    )

I, Sara Doudrick, declare under penalty of perjury, say that on April 9, 2018, I mailed via U.S. Mail and CM/ECF emailed copies of the Notice of Hearing and Motion for Relief from Stay, Affidavit, annexed Memorandum of Law, Proposed Order for Relief from Stay, and Certificate of Service on the following interested parties at their last known address.

Service Via U.S. Mail

Christie Lee Szabla asf Pride Martial Arts & Fitness, LLC
24480 17th Ave
St Augusta, MN 56301

Jason Joseph Szabla
24480 17th Ave
St Augusta, MN 56301

Additional Copy(s) served electronically through the Court's ECF System or by first class U.S. mail postage addressed to:

Attorney for Debtor
William P Kain
Kain & Scott P A
13 7th Ave South
Saint Cloud, MN 56301

Chapter 13 Trustee
Kyle L. Carlson
PO Box 519
Barnesville, MN 56514

U. S. Trustee
1015 U.S. Courthouse
300 South 4th St.                            /s/ Sara Doudrick
Minneapolis, MN 55415                 Sara Doudrick

# UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

In Re:

Case No.  17-60649 MER

Christie Lee Szabla
asf Pride Martial Arts & Fitness, LLC
and Jason Joseph Szabla,

      Debtors.

## <u>ORDER GRANTING RELIEF</u>

This case is before the court on the motion of Federal National Mortgage

Association ("Fannie Mae"), for relief from the automatic stay imposed by 11 U.S.C. §

362(a).

Based on the records, the court finds that grounds exist under 11 U.S.C. § 362(d)

to warrant relief.

**IT IS ORDERED:**

1.     The motion for relief from stay is granted as follows.

2.     The automatic stay imposed by 11 U.S.C. § 362(a) is terminated such that

the movant may exercise its rights and remedies under applicable nonbankruptcy law

with respect to the following property:

Lot Two (2), Block Three (3), Blackberry Farms, according to the Plat

and Survey thereof on File and of Record in the Office of the County

Recorder in and for Stearns County, Minnesota.

3.      Notwithstanding Federal Rule of Bankruptcy Procedure 4001(a)(3), this

order is effective immediately.




Dated: _____          _____

                                        United States Bankruptcy Judge